ABNEY et al., Appellants,

v.

WESTERN RESERVE MUTUAL CASUALTY CO. et al., Appellees.

[Cite as *Abney v. Western Res. Mut. Cas. Co.* (1991), 76 Ohio App.3d 424.]

Court of Appeals of Ohio,
Warren County.

Nos. CA90–12–091, CA90–12–092.

Decided Oct. 28, 1991.

*Roger C. Stridsberg* and *Jim Rimedio,* for appellants.

*James W. Patton,* for appellee Western Reserve Mutual Casualty Company.

*Lawrence P. Fiehrer,* for appellee Gary Michael Stephens.

*Droder & Miller Co., L.P.A.,* and *W. John Sellins,* for appellee Robert E. Brindle.

---

*Per Curiam.*

Plaintiffs-appellants, Jeffrey P. Abney, Colleen Abney and Midwest Foundation Independent Physicians' Association, d.b.a. ChoiceCare, appeal a decision of the Warren County Court of Common Pleas granting judgment in favor of defendants-appellees, Western Reserve Mutual Casualty Company, Gary Michael Stephens and Robert E. Brindle.

On April 21, 1987, Jeffrey Abney was severely injured while he was a passenger in a boat operated by Gary Michael Stephens. As a result of a dispute about ownership of the boat and insurance coverage, the Abneys, along with their insurer, ChoiceCare, filed a complaint against Stephens, Brindle, Western Reserve, Dallas Daniels and Trinity Universal Insurance Company on December 20, 1989. All claims against Daniels and his insurer, Trinity Universal Insurance Company, were later dismissed by the trial court.

In their complaint, appellants sought a judgment declaring that Western Reserve, as insurer for both Stephens and Brindle under separate homeowner's policies, was liable to pay any judgment rendered against Stephens or Brindle arising out of the accident. Both policies contained an exclusion for watercraft with motors over fifty horsepower. Western Reserve subsequently filed cross-claims against Brindle and Stephens, alleging that it was not required to defend under either policy.

A bench trial was held on June 18, 1990. The evidence revealed that in early March 1987, Brindle purchased the boat from Daniels for $3,000. Daniels signed the title in blank and gave it to Brindle. However, Daniels's signature was never notarized and the title was never completely filled out. At that time, the boat was taken to the home of Jeanne Stephens and Gary Michael Stephens, Brindle's daughter and son-in-law.

Brindle realized almost immediately after purchasing the boat that his health would prevent him from using it. He also had difficulty insuring it because it was too old and the engine had too much horsepower. Brindle never operated the boat and it remained at the Stephenses' residence until the accident.

Subsequently, Brindle offered to give the boat to his older son, John, or, in the alternative, to give John the sum of $2,000. John declined the offer of the boat. Brindle then made the same offer to his daughter. Jeanne Stephens initially told her father that she and her husband did not want the boat, but within a few days she called and told him they would take it. A short time later, Brindle delivered the title, which he never signed, to his daughter.

Subsequently, the Stephenses decided to sell the boat. They did not discuss the sale with Brindle, and Brindle did not participate in the sale in any way. Further, Brindle stated that he did not anticipate receiving any money from the Stephenses when the boat was sold. The Abneys were prospective purchasers and it was during the course of a test drive that the boat exploded and Jeffrey Abney was injured.

After hearing the evidence, the trial court found that the Stephenses were the owners of the boat on the date of the accident. The court further found that the motor attached to the boat was rated at one hundred twenty horsepower, that the actual horsepower was in excess of fifty, and that the Western Reserve policy specifically excluded from coverage any boat with a motor of more than fifty horsepower. Therefore, the trial court held that Western Reserve was not liable for coverage to the Stephenses and had no duty to defend them in a pending personal injury action. This appeal followed.

Appellants present four assignments of error for review. In their first assignment of error, appellants state that the trial court erred in determining the ownership of the boat. They argue that the Stephenses did not acquire a legal or equitable interest in the boat, because no certificate of title was issued to them pursuant to R.C. Chapter 1548. We find that this assignment of error is not well taken.

R.C. 1548.04 provides:

"No person acquiring a watercraft or outboard motor from the owner thereof, whether such owner is a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to such watercraft or outboard motor until such person has had issued to him a certificate of title to such watercraft or outboard motor, or delivered to him a manufacturer's or importer's certificate for it. Nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title, or manufacturer's or importer's certificate for such watercraft or outboard motor, for a valuable consideration.

"No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any watercraft or outboard motor sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with Chapter 1548. of the Revised Code;

"(B) By admission in the pleadings or stipulation of the parties."

R.C. 1548.04 is substantially similar to R.C. 4505.04, which relates to certificates of title for automobiles. In *Smith v. Nationwide Mut. Ins. Co.* (1988), 37 Ohio St.3d 150, 524 N.E.2d 507, the Ohio Supreme Court stated that R.C. 4505.04 is "irrelevant to all issues of ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." *Id.* at 153, 524 N.E.2d at 509. *Smith* involved the sale of a motor vehicle and the court determined that the criteria in the Uniform Commercial Code and not the Certificate of Title Act determined who was the owner of a motor vehicle for purposes of determining insurance coverage in case of an accident. *Id.* at syllabus.

Appellants argue that *Smith* is distinguishable because the present case involves a gift, not a sale, and the Uniform Commercial Code is inapplicable. We find this to be an illusory distinction when the reasoning behind *Smith* is considered. We believe the Supreme Court has made it clear that, given the purpose of the Certificate of Title Act, unless an action involves issues of ownership relating to the importation of vehicles, rights between lienholders, rights of bona-fide purchasers, or instruments evidencing title and ownership, the Certificate of Title Act is not the exclusive method to prove ownership of a vehicle. See *Nolen v. Standard Oil Co.* (1989), 63 Ohio App.3d 746, 749, 580 N.E.2d 49, 51; *Sparks v. Prater* (Mar. 20, 1989), Butler App. No. CA88–09–133, unreported, at 3–4, 1989 WL 25567.

Like *Smith, supra*, the present case involves identifying the owner of a vehicle for purposes of determining insurance coverage, and we see no reason why the logic of *Smith* should not be applied to the present case even though it involves a gift, not a sale. This holding is in accordance with those of other jurisdictions with certificate of title laws similar to Ohio's that have recognized that the validity of a gift as between the donor and donee is not affected by the failure to comply with statutory requirements regulating transfer or sale of motor vehicles. *E.g., Hall v. Country Cas. Ins. Co.* (1990), 204 Ill.App.3d 765, 150 Ill.Dec. 110, 562 N.E.2d 640; *Touchet v. Guidry* (La.1989), 550 So.2d 308; *Allen v. Holloway* (1969), 119 Ga.App. 676, 168 S.E.2d 196.

We further conclude that there was a valid gift from Brindle to the Stephenses. In *Bolles v. Toledo Trust Co.* (1936), 132 Ohio St. 21, 7 O.O. 60, 4 N.E.2d 917, the Ohio Supreme Court stated:

"The essentials of a valid gift *inter vivos* are (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion, and control over it." *Id.* at paragraph one of the syllabus. See, also, *Fleisch v. Suedhof* (Dec. 8, 1986), Clermont App. No. CA86–05–032, unreported, at 5, 1986 WL 14083.

A gift must be proven by clear and convincing evidence. *Bolles, supra,* at paragraph two of the syllabus.

■ Brindle testified that he intended to give the boat to his daughter if she wanted it. Jeanne Stephens testified that she called her father and told him she and her husband would take the boat. The Stephenses already had physical possession of the boat and Brindle delivered the certificate of title to them shortly before the accident. In sum, Brindle did all that was necessary as far as he knew to transfer ownership, dominion and control of the boat to the Stephenses. Further, the Stephenses' conduct indicated that they had accepted the gift of the boat. The Stephenses attempted to sell the boat without consulting Brindle and without giving Brindle any of the proceeds. In sum, we find that there was sufficient evidence to produce in the mind of the trier of fact a firm belief or conviction that Brindle had given the boat to the Stephenses, that the Stephenses had accepted and that the gift was complete. Therefore, the trial court's finding that the Stephenses were the owners of the boat was supported by clear and convincing evidence. See *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 18 OBR 419, 425, 481 N.E.2d 613, 620. Accordingly, appellants' first assignment of error is overruled.

In their second assignment of error, appellants state that the trial court's judgment is against the manifest weight of the evidence. They argue that there was no evidence to support the trial court's finding that the Stephenses were the owners of the boat or that the motor of the boat exceeded fifty horsepower. We find this assignment of error is not well taken.

■ Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

In the first assignment of error, we concluded that there was competent, credible evidence to support the trial court's finding that the Stephenses were the owners of the boat. Consequently, we need not address that issue again here.

The policy from Western Reserve contained an exclusion for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading and unloading of a watercraft * * * owned by or rented to any Insured if the watercraft has inboard or inboard-outboard motor power of more than fifty horsepower." Joint Exhibit Three, the certificate of title, was stipulated to by the parties. It indicates that the boat had an inboard motor with a horsepower of one hundred twenty. Accordingly, there was competent, credible evidence to support the conclusion that the motor's horsepower exceeded fifty. See *State ex rel. Celebrezze v. Calautti* (Sept. 1, 1989), Mahoning App. No. 88 C.A. 88, unreported, at 7, 1989 WL 101640; 1 Weissenberger, Ohio Evidence (1989), Section 803.05 (certificates of title are admissible into evidence under the public records exception to the hearsay rule). Appellants simply did not present any evidence to rebut the certificate of title. Appellants did present some testimony that horsepower could be measured on different scales and that "actual horsepower" is generally less than "rated horsepower." However, they did not present any testimony indicating the engine's horsepower when measured on any of these scales.

The trial judge, as the trier of fact, chose to reject the evidence presented by appellants and to accept the measure of horsepower set forth in the certificate of title. It is well settled that matters related to the credibility of the evidence are for the trier of fact to decide and, as a reviewing court, we will not substitute our judgment for that of the trier of fact. *Seasons Coal Co., supra,* 10 Ohio St.3d at 80, 10 OBR at 410–411, 461 N.E.2d at 1276; *State v. Walker* (1978), 55 Ohio St.2d 208, 212, 9 O.O.3d 152, 154, 378 N.E.2d 1049, 1051, certiorari denied (1979), 441 U.S. 924, 99 S.Ct. 2033, 60 L.Ed.2d 397. Accordingly, appellants' second assignment of error is overruled.

In their third assignment of error, appellants state that the trial court erred in failing to provide findings of fact and conclusions of law. They argue that the trial court's decision did not contain separate findings of fact and conclusions of law and is not sufficient to satisfy the requirements of Civ.R. 52. We find this assignment of error is not well taken.

Civ.R. 52 provides:

"When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice

of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

"* * *

"An opinion or memorandum of decision filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately shall be sufficient to satisfy the requirements of this rule and Rule 41(B)(2)."

The trial court overruled appellants' motion for findings of fact and conclusions of law, stating that its written decision "is a complete statement of the court's findings and conclusions and fully complies with the final paragraph of Civ.R. 52." We agree.

 The purpose of separately stated findings of fact and conclusions of law is to enable a reviewing court to determine the existence of assigned error. *Davis v. Wilkerson* (1986), 29 Ohio App.3d 100, 101, 29 OBR 112, 112, 503 N.E.2d 210, 211. If the court's ruling or opinion, together with other parts of the trial court's record, provides an adequate basis upon which an appellate court can decide the legal issues presented, there is such substantial compliance with Civ.R. 52. *Stone v. Davis* (1981), 66 Ohio St.2d 74, 84–85, 20 O.O.3d 64, 70–71, 419 N.E.2d 1094, 1101, certiorari denied (1981), 454 U.S. 1081, 102 S.Ct. 634, 70 L.Ed.2d 614; *Davis v. Wilkerson, supra,* 29 Ohio App.3d at 101, 29 OBR at 112, 503 N.E.2d at 211. We find that the trial court's written decision sufficiently sets forth the basis of its ruling, and this court has an adequate basis upon which to decide the assignments of error presented. Accordingly, appellants' third assignment of error is overruled.

In their fourth assignment of error, appellants state that the trial court erred "in its decision which it considered to be separate findings of fact and conclusions of law in that the decision is not supported by the evidence in the case." In this assignment of error, appellants are again arguing that the trial court's decision is against the manifest weight of the evidence. However, we have already rejected this argument. Accordingly, the fourth assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

KOEHLER, P.J., WILLIAM W. YOUNG and WALSH, JJ., concur.