OPINION
Defendants-appellants, Jon Hummel, and his attorney, appellant John W. Ferron, appeal from the following decisions and entri es of the Franklin County Court of Common Pleas:
(1) the trial court's January 6, 2000 Decision and Entry quashing Defendant's subpoenas issued to David S. Kessler and the recor ds custodian of Blaugrund, Herbert Martin;
(2) the trial court's February 16, 2000 Journal Entry;
(3) the trial court's February 17, 2000 Order of Reference;
(4) the trial court's May 4, 2000 Decision and Entry overr uling Defendant's Motion for Rescission;
(5) the trial court's June 2, 2000 Decision and Entry Adopting Magistrate's Decision of May 15, 2000 and Overruling Defendant's Motion for Reconsideration of the Court's May 4, 2000 Decis ion and Entry;
(6) the trial court's May 21, 2001 (filed May 22, 2001) Decision and Entry: Overruling Defendant's Objections to the Magistrate's Decision of May 15, 2000 and Adopting the Magis trate's Decision of May 15, 2000; and
(7) The trial court's August 23, 2001 (filed August 27, 2001) Decision and Entry Denying Defendant's and His Counsel's May 29, 2001 Request for the Court's Issuance of Separate Findings of Fact and C onclusions of Law.
For the reasons that follow, we affirm.
This is a sanctions matter that has been before this court once before. See Capitol Mortgage Services, Inc. v. Hummel (Feb. 22, 2001), Franklin App. No. 00AP-734. The following facts are relevant and, for the most part, taken from the earlier appeal.
On August 20, 1998, Capitol Mortgage Services, Inc. ("Capitol"), filed a lawsuit against Jon Hummel, its former employee. Capitol alleged that Mr. Hummel had violated the terms of a covenant not to compete when Mr. Hummel had accepted employment with Macloud Financial, Inc. ("Macloud"). Capitol sought both monetary damages and injunctive relief. Counsel for Capitol served subpoenas for depositions for September 1, 1998 and a list of documents to be brought to the depositions. Apparently, Capitol filed lawsuits against two other employees of Macloud at the same time and scheduled depositions with respect to these other two employees for the same date.
Counsel for Macloud filed motions to quash the subpoenas issued to Macloud on August 28, 1998. Counsel for Capitol responded with a memorandum contra on September 1, 1998 and requested sanctions under Civ.R. 45(E) because Macloud had not provided the documents requested.
On September 2, 1998, attorneys John W. Ferron and Sloan T. Spalding entered appearances as counsel for Jon Hummel. Apparently, the same attorneys also entered appearances on behalf of the other two employees, Len Finelli and Steve Gombosch. The attorneys moved to consolidate the three lawsuits. Counsel for Capitol resisted the consolidation, but the motion was sustained.
On October 5, 1998, an answer and counterclaim was filed on behalf of Mr. Hummel and the other named defendants.
On October 14, 1998, the defendants filed a motion for partial summary judgment. In the meantime, disagreements about discovery continued and Capitol filed a motion seeking additional time to respond to the defendants' discovery requests. Counsel for the three former employees resisted an extension of time, filing a memorandum contra on November 6, 1998. On November 12, 1998, counsel for Capitol filed a reply memorandum. Eventually, a protective order was granted.
In the meantime, settlement negotiations were being pursued, with Macloud and its counsel being involved in the negotiations. At some point in time, a question arose as to whether Attorney Ferron still represented Steve Gombosch. This question was presented in the context of whether or not Mr. Gombosch had accepted an offer of settlement against `s recommendation.
On December 10, 1998, the trial court entered an amended case scheduling order, setting forth deadlines for disclosure of witnesses and various other requirements. Trial was scheduled for August 1999. The order was served on and Mr. Spalding as attorneys for the named defendants.
On January 6, 1999, counsel for Capitol filed its initial disclosure of witnesses and served a copy of the document upon.
On February 3, 1999, new counsel was entered on behalf of a third-party defendant who had been named. Again, was served as counsel for the defendants.
On February 5, 1999, acting as counsel for Len Finelli and Jon Hummel, filed a motion requesting that the law firm which represented Capitol be barred from further representation of Capitol on a theory that the firm had communicated with Steve Gombosch while still represented Mr. Gombosch.
Discovery was stayed while the motion was awaiting a ruling.
On March 1, 1999, counsel for Capitol filed a memorandum contra and an affidavit signed by Mr. Gombosch regarding the dates of his representation by and Mr. Gombosch's views of when the attorney-client relationship ended. Mr. Gombosch also alleged that he had not told anyone except his wife and his new attorney about any conversations he had had with.
On April 5, 1999, the trial judge overruled the motion to bar representation. In the trial court's April 5, 1999 entry, the trial court specifically noted that had failed to disclose to the court the existence of Mr. Gombosch's December 18, 1998 letter firing him.
On August 30, 1999, counsel for Capitol filed a motion seeking sanctions under Civ.R. 11 and R.C. 2323.51 and requested a hearing no later than 21 days after entry of judgment. Counsel for Capitol alleged that the motion seeking disqualification of the firm had been frivolous.
Discovery resumed and the parties resumed having difficulty in that area of the lawsuit. The trial date was delayed until February 14, 2000.
A hearing on the motion for sanctions was scheduled and rescheduled before three different magistrates. Attorney Ferron subpoenaed witnesses for a hearing regarding the motion scheduled for January 10, 2000. One of the witnesses was the attorney for Macloud, who was commanded to bring a variety of documents regarding the settlement involving Mr. Gombosch. The attorney and his firm responded with a motion to quash.
The law firm Attorney Ferron had been seeking to disqualify also was subpoenaed. It also filed a motion to quash. On January 6, 2000, the trial court ruled on the motions to quash the day after they were filed and before Attorney Ferron had an opportunity to respond. The trial judge also restricted the scope of the hearing before the magistrate "to the determination of the financial sanction to be imposed against Attorney Ferron and/or defendant as a result of: (1) the filing of the Motion to Disqualify and Bar Representation; and (2) failure to cooperate with discovery."
On January 14, 2000, counsel for Macloud filed a motion seeking "reimbursement of expenses associated with subpoena issued by defendant to movant." filed a memorandum contra in response. Counsel for Macloud filed a reply.
On February 8, 2000, Capitol and Jon Hummel filed a stipulation of dismissal of the underlying lawsuit and a stipulation of withdrawal of all pending motions "filed by either party."
On February 16, 2000, the trial court referred the motion filed on behalf of Macloud to a magistrate "to determine the following: (1) whether Attorney Kessler and his law firm were, in fact, subjected to an undue burden by defendant and Attorney Ferron in their issuance of the subpoenas; and (2) if so, the appropriate amount of the sanctions to be assessed against defendant and/or Attorney Ferron."
The parties disagreed as to whether the settlement and dismissal of the underlying case also disposed of the motion filed by Attorney Kessler. The trial court ordered the matter to proceed to a hearing.
A hearing was held on May 5, 2000, and a magistrate's decision was filed May 15, 2000. The magistrate's decision included findings that the court retained jurisdiction and that a financial sanction should be assessed against.
On June 2, 2000, the trial court adopted the magistrate's decision. In its decision and entry, the trial court noted that no party had filed objections to the magistrate's decision. Later on, the same day, filed objections to the magistrate's decision. Such objections included an assertion that service of the magistrate's decision was improper under Civ.R. 53. On June 30, 2000, Attorney Ferron and his client initiated a direct appeal.
A split panel of this court found that service of the magistrate's decision was not proper and that the trial court should have considered Attorney Ferron's objections. This court remanded the matter to the trial court to "independently rule on the issues as to whether or not the subpoena of the Kessler firm was a frivolous action and, if so, what sanctions should attach."
In a decision dated May 21, 2001 and filed May 22, 2001, the trial court overruled the objections to the magistrate's decision, adopted the magistrate's decision, made an independent determination that the sanctions hearing was pursuant to Civ.R. 45(E), and ordered Attorney Ferron to pay Attorney Kessler $4,168.18.
This appeal followed, with appellants assigning as error the following:
"A. APPELLANT'S FIRST ASSIGNMENT OF ERROR:
"The trial court committed reversible error in issuing its January 6, 2000 decision and entry sustaining appellees' motion to quash.
"B. APPELLANT'S SECOND ASSIGNMENT OF ERROR:
"The trial court erred as a matter of law TO THE PREJUDICE OF APPELLANTS in asserting jurisdiction and issuing any further rulings after February 8, 2000, when the trial court unequivocally approved the termination of the case upon the parties' submission of a stipulation of dismissal with prejudice.
"C. APPELLANTS' THIRD ASSIGNMENT OF ERROR:
"The trial court committed reversible error to the prejudice of appellants in overruling appellant's April 18, 2000 motion for rescission.
"D. APPELLANTS' FOURTH ASSIGNMENT OF ERROR:
"The trial court committed reversible error to the prejudice of appellants as a matter of law in adopting the magistrate's May 15, 2000 decision.
"E. APPELLANTS' FIFTH ASSIGNMENT OF ERROR:
"The trial court commit reversible error to the prejudice of appellants in imposing sanctions against appellant Ferron because he did not issue or serve the subpoenas on appellees.
"F. APPELLANTS' SIXTH ASSIGNMENT OF ERROR:
"The trial court committed reversible error to the prejudice of appellant[s] in awarding appellees an amount that exceeds their actual costs in securing the court's January 6, 2000 order quashing appellant's subpoenas.
"G. APPELLANTS' SEVENTH ASSIGNMENT OF ERROR:
"The trial court committed reversible error to the prejudice of appellants by refusing to honor appellants' request for findings of fact and conclusions of law pursuant to Civil Rule 52."
In their first assignment of error, appellants attack the underlying reason for the imposition of sanctions. Appellants contend the trial court erred in sustaining the motion to quash subpoenas to produce documents and compel the attendance of persons at a hearing before the magistrate to determine the amount of sanctions to be imposed against Attorney Ferron in filing the motion to disqualify and bar representation.
Appellants' argument is not well-taken for two reasons. First, appellants voluntarily dismissed the underlying lawsuit on February 8, 2000. Thus, the January 6, 2000 decision and entry quashing the subpoenas was an interlocutory order that was dissolved when the underlying case was dismissed. See, e.g., State ex rel. Hunt v. Thompson (1992), 63 Ohio St.3d 182; Zimmie v. Zimmie (1984), 11 Ohio St.3d 94,95; Nielsen v. Firelands Rural Elec. Coop., Inc. (1997),123 Ohio App.3d 104, 106 (a voluntary dismissal, without prejudice, dissolves interlocutory orders made by the court in that action); see, also, Ohio Dept. of Adm. Serv. v. Robert P. Madison Internatl., Inc. (2000), 138 Ohio App.3d 388, 397-398.
Second, even if appellants could appeal the decision, the trial court did not abuse its discretion in granting the motion to quash. On April 5, 1999, the trial court overruled Attorney Ferron's motion to disqualify. The trial court found that, not only did Mr. Gombosch unequivocally terminate the attorney-client relationship with Attorney Ferron, but, also, Attorney Ferron failed to mention to the court the December 18, 1999 letter he received via facsimile from Mr. Gombosch in which Mr. Gombosch did so. That letter reads as follows:
"Jack,
"At this time, I feel it [is] in my best interest to discuss the proposed settlement with Bridgette Roman and Capitol Mortgage, subject to a few changes in wording. I appreciate the representation you have given me through this interesting process, but as things still continue to drag on I would rather just have them ended. I wish Len, Jon and you success with your continued challenge with Capitol but I want out. I apologize for any inconveniences this may cause you and your case, but at this time I would like for you to forward a bill for your services, less the $1,500 that I put up to begin this case.
"I apologize for this change of heart but I think its [sic] time for some closure and time to move ahead. Good luck!
"Sincerely,
"/s/ Steve Gombosch"
The trial court granted the motion to quash because Attorney Ferron was trying to relitigate the merits of the motion to disqualify. The trial court did not abuse its discretion in limiting discovery to the central issue before the magistrate, the determination of the financial sanction to be imposed as a result of the filing of the motion to disqualify, and the failure to cooperate with discovery. Appellants' first assignment of error is, therefore, not well-taken and is overruled.
In their second and third assignments of error, appellants argue the trial court lost jurisdiction after dismissal of the case on February 8, 2000, and, therefore, erred in taking any further action, including imposing monetary sanctions on Attorney Ferron. Appellees counter that they are not parties to the underlying litigation and that the trial court retains jurisdiction over a collateral issue such as this.
As discussed above, a voluntary dismissal under Civ.R. 41(A)(1) generally divests a court of jurisdiction. However, a hearing on sanctions is considered collateral to the underlying proceedings, and a trial court therefore retains jurisdiction for the limited purpose of applying Civ.R. 11 and R.C. 2323.51. See Indus. Risk Insurers v. Lorenz Equip. Co. (1994), 69 Ohio St.3d 576, 580, citing Cooter Gell v. Hartmarx Corp. (1990), 496 U.S. 384, 396-397, 110 S.Ct. 2447, 2456-2457
(Rule 11 sanctions are collateral to the action and may be considered by the trial court after an action is no longer pending); Schwartz v. Gen. Acc. Ins. of Am. (1993), 91 Ohio App.3d 603, 606 (trial court does not lose jurisdiction to consider properly filed motions for sanctions pursuant to Civ.R. 11 and R.C. 2323.51 following plaintiff's voluntary dismissal of the complaint under Civ.R. 41).
In State ex rel. Corn v. Russo (2001), 90 Ohio St.3d 551, syllabus, the Ohio Supreme Court held that the dismissal of an underlying civil action does not divest a court of common pleas of jurisdiction to conduct criminal contempt proceedings. The court distinguished between civil contempt and criminal contempt proceedings, as it is well established that where the parties settle the underlying case that gave rise to the civil contempt sanction, the contempt proceeding is moot, since the case has come to an end. Id. at 555, citing Gompers v. Buck's Store and Range Co. (1911), 221 U.S. 418, 451-452, 31 S.Ct. 492, 502. The Supreme Court of Ohio noted that civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. Corn at 555. Criminal contempt sanctions are punitive in nature and designed to vindicate the authority of the court.
In discussing the trial court's retention of jurisdiction, the Ohio Supreme Court cited with approval Cooter Gell, supra, in which the United States Supreme Court noted that both Fed.R.Civ.P. 41 and 11 were primarily aimed at curbing abuses of the judicial system and, therefore, their policies are compatible. The court went on to note that a plaintiff's right to one free dismissal does not secure the right to file baseless papers. Cooter at 397-398, 110 S.Ct. at 2457.
The Supreme Court of Ohio has recently determined that the same principals are applicable in the instant case. State ex rel. Hummel v. Sadler, 96 Ohio St.3d 84, 2002-Ohio-3605. In that case, Attorney Ferron sought writs of prohibition and mandamus to order Judge Sadler to refrain from exercising any jurisdiction over the underlying sanctions matter currently before this court. The Ohio Supreme Court determined that the trial court did not patently and unambiguously lack jurisdiction over a nonparty's pending claim for discovery sanctions. Id. at ¶ 26, 30.
Civ.R. 45(C)(1) imposes a duty upon attorneys to avoid imposing undue burden or expense on a person subject to a subpoena issued pursuant to the rule. The rule allows the court to impose sanctions upon an attorney or a party who breaches that duty. Imposition of such a sanction is a collateral matter, not a judgment on the merits of the action. Thus, a voluntary dismissal does not require the court to turn a blind eye to abuse of the adjudicatory process. Accordingly, the trial court retained jurisdiction for the limited purpose of considering the motion for sanctions, as any other result would permit a party to voluntarily dismiss an action to evade an award of sanctions under Civ.R. 45. Appellants' second and third assignments of error are not well-taken and are overruled.
In their fourth assignment of error, appellants contend the trial court erred in adopting the magistrate's decision without conducting an independent review and analysis of the evidence and appellants' objections. We disagree.
The trial court's decision and entry succinctly reviews the pertinent facts and issues raised by appellants' objections. Moreover, the decision clearly states as follows: "[h]aving independently reviewed and analyzed the record and the Magistrate's decision of May 15, 2000, and having duly considered Defendant's objections thereto, the Court hereby OVERRULES Defendant's objections and ADOPTS the Magistrate's decision to award sanctions against attorney Ferron and in favor of attorney Kessler." (Decision and Entry of May 22, 2001, at 5). The fourth assignment of error is not well-taken and is overruled.
In their fifth assignment of error, appellants argue the trial court erred in imposing sanctions upon Attorney Ferron because he did not personally issue or serve the subpoenas upon appellants. Attorney Ferron argues that because his second chair, Sloan Spaulding, physically drafted and delivered the subpoenas, Attorney Ferron should not be held responsible.
This argument is without merit. Attorney Ferron signed the subpoenas and, as such, was the issuing attorney and responsible for their issuance and the breach of the duty not to impose an undue burden on the person served. See Civ.R. 45. The fifth assignment of error is not well-taken and is overruled.
In their sixth assignment of error, appellants argue that the trial court erred in that the amount of sanctions was excessive. Appellants claim the only fees the trial court was authorized to award were the fees associated with the costs associated with the preparation of the motion to quash.
The fees awarded included reviewing subpoenas, seeking voluntary release from the subpoenas, filing a motion to quash, preparing a motion for reimbursement, responding to Attorney Ferron's motion for rescission, motion for reconsideration, and preparing and attending the hearing before the magistrate. Civ.R. 45(E) provides in pertinent part that: "The court from which a subpoena was issued may impose upon a party or attorney in breach of the duty imposed by division (C)(1) of this rule an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fees."
Based upon our review of the record, we find no abuse of discretion in the award fashioned by the trial court. The sixth assignment of error is not well-taken and is overruled.
In their seventh assignment of error, appellants argue the trial court erred in failing to issue findings of fact and conclusions of law. The trial court denied the request on the basis that the magistrate properly set forth separate findings of fact and conclusions of law pursuant to Civ.R. 53(E)(2), and the trial court independently reviewed them, found they were supported by the record and the law, and adopted them as its own in its decision and entry of May 22, 2001.
Upon review, we agree with the trial court. The purpose of separately stated findings of fact and conclusions of law is to enable a reviewing court to determine the existence of assigned error. Here, the magistrate's decision and the trial court's decision complied with the requirements of Civ.R. 53 and provided more than an adequate basis upon which to decide the legal issues presented. See Drake Ctr., Inc. v. Ohio Dept. of Human Serv. (1998), 125 Ohio App.3d 678, 705-706, citing, Abney v. Western Res. Mut. Cas. Co. (1991), 76 Ohio App.3d 424, 431. Appellants' seventh assignment of error is without merit and is overruled.
Based on the foregoing, appellants' seven assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and BROWN, J., concur.