OPINION.
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiff-Appellant, John Weaver, Jr., appeals the decision of the Mahoning County Court No. 2 which found in favor of Defendant-Appellee, Armando's, Inc., after a bench trial. We are asked to decide whether the trial court's findings of fact and conclusions of law are sufficient and whether the trial court erred when it found Armando's did not violate any provisions of Ohio's Consumer Sales Practices Act ("CSPA"), R.C. 1345.01 et seq.
 {¶ 2} The trial court's findings of fact are sufficient to enable appellate review of its decision. Accordingly, it substantially complied with the Civil Rule requiring it to make findings of fact and conclusions of law when requested. In addition, its conclusion that Armando's did not violate the CSPA is not against the manifest weight of the evidence as the record does not support some of Weaver's claims and it was reasonable for the trial court to discount some of Weaver's testimony. Accordingly, we cannot say the trial court abused its discretion and its decision is affirmed.
 Facts {¶ 3} In 1997, Weaver owned a 1974 Mercedes-Benz which began to have engine problems. He decided he would buy a used replacement engine and contacted Armando's about removing his old engine and installing the new engine for him. When he first went to Armando's on August 6, 1997, he did not bring the car with him, but informed the service manager what he wanted and left a $250 deposit. At that time, he did not ask for an estimate of the total cost of the repairs. A few days later, Weaver delivered the car to Armando's. At that time, Weaver claims the service manager told him the repairs would cost about $600. On August 11, 1997, Armando's created a document estimating the total cost of the repairs would be $1,050. But Weaver testified he never received a written estimate and that he was not informed of his right to a written estimate. He also testified he was not informed he would have to pay the total cost of the repair before Armando's would begin working on his car.
 {¶ 4} After taking the car to Armando's, Weaver proceeded to order a used engine from Center Service Auto, a dealer in used automobile parts. Center Service provided a thirty day guarantee on the engine. On March 3, 1998, Weaver picked up the engine and delivered it to Armando's. At that time, Armando's had a new service manager, so Weaver informed him that the new engine only had a thirty day warranty, so it needed to be in the car as soon as possible. A couple of days later, Weaver called Armando's and asked if the repairs had been completed. He was told they weren't and that he had to pay more money. He was informed the repairs would now cost $700. The new engine was not installed in the warranty period. Weaver states he was never informed why the repairs were not completed within that time. By this time, Armando's had another new service manager who asked Weaver to "bear with them". Weaver decided to leave the car at Armando's since the warranty on the new engine had expired and he had already given Armando's $400 toward the repairs. Over the course of the next few months, Weaver periodically called Armando's to check on the status of the repairs.
 {¶ 5} In December 1999, Randy Spano, the son of the owner of Armando's became the new service manager. A couple of months later, Weaver came in to talk to Spano about his car and was informed the cost of the repairs would be $900, plus additional parts, for a total of $1,009.17. By this time, Weaver had already paid Armando's $900 and, on April 16, 1999, he paid the remaining $109.17. A few days later, Armando's called Weaver to inform him that they put the engine in but that it was not running. Weaver subsequently complained to Spano, his father, Armando Spano, and filed complaints with the Better Business Bureau and the Attorney General.
 {¶ 6} After all of this, Weaver filed a complaint against Armando's in small claims court. That complaint was voluntarily dismissed without prejudice and soon thereafter Weaver filed a new complaint against Armando's claiming violations of the CPSA. Armando's moved to dismiss the complaint, arguing Weaver did not file his complaint within the applicable statute of limitations. That motion was denied and the case proceeded to a bench trial. Following trial, the trial court recused itself, noting it recalled a circumstance requiring disqualification. The parties then filed a joint motion to have the new judge decide the matter upon a transcript of the original proceedings. Weaver also requested findings of fact and conclusions of law. After reviewing the transcript, the trial court concluded that Armando's did not commit a deceptive sales act or practice and, therefore, granted judgment for Armando's. It is from this judgment that Weaver timely appeals.
 Findings of Fact and Conclusions of Law {¶ 7} Weaver argues four assignments of error on appeal. But we will first address his third assignment of error. That assignment of error argues:
 {¶ 8} "The trial court committed reversible error when it failed to make findings of fact and conclusions of law regarding whether Appelle [sic] had violated various provisions of the Ohio Administrative Code109:4-3-13."
 {¶ 9} Whenever a trial court hears a bench trial, a party may request the trial court issue findings of fact and conclusions of law when entering judgment. Civ.R. 52. "[A] trial court has a mandatory duty under Civ.R. 52 to issue findings of fact and conclusions of law upon request timely made." In re Adoption of Gibson (1986), 23 Ohio St.3d 170,173. "The purpose of separately stated findings of fact and conclusions of law is to enable a reviewing court to determine the existence of assigned error." Abney v. Western Res. Mut. Cas. Co. (1991),76 Ohio App.3d 424, 431. When a party argues the trial court's findings are insufficient, then a reviewing court must determine whether the trial court substantially complied with the procedural rule requiring the court to make separate findings of fact and conclusions of law. Brandon/WiantCo. v. Teamor (1999), 135 Ohio App.3d 417, 423. "The test for determining whether a trial court's opinion satisfies the requirements of Civ.R. 52 is whether the contents of the opinion, when considered together with other parts of the record, form an adequate basis upon which to decide the narrow legal issues presented." Id., citing Werden v. Crawford
(1982), 70 Ohio St.2d 122, 124.
 {¶ 10} The narrow legal issue presented in this case is whether Armando's committed an unfair or deceptive sales practice in violation of the CSPA. It is clear from the trial court's findings of fact and the record why the trial court found Armando's did not violate the CSPA. The trial court found there was no violation of the Act since the parties agreed Armando's would not start work on the vehicle until it was paid in advance for its services and that it provided Weaver with a written estimate of the cost of the job. Weaver argues the trial court failed to make findings relating to certain ways he claims Armando's violated the CSPA. But as will be addressed below, he failed to present any evidence on some of those claims. Accordingly, the trial court substantially complied with Civ.R. 52 when it issued its findings of fact and conclusions of law. Weaver's third assignment of error is meritless.
 Consumer Sales Practices Act {¶ 11} Weaver's fourth assignment of error encompasses the arguments he makes in his first two assignments of error. Accordingly, we will address all of those assignments of error together. Those assignments of error argue as follows:
 {¶ 12} "The trial court's finding that Appellant was required to pay the entire cost of the repairs prior to the commencement of the work is against the manifest weight of the evidence and contrary to law."
 {¶ 13} "The trial court erred to the prejudice of Appellant by impliedly finding that the Ohio Administrative Code 109:4-3-13(A)(1) obligated to Appellant [sic] to request a written repair estimate."
 {¶ 14} "The trial court committed reversible error when it found that Appelle [sic] had not committed unfair and deceptive acts and practices in violation of the CSPA."
 {¶ 15} In addition, Armando's has argued a conditional assignment of error:
 {¶ 16} "The trial court erred in not granting Defendant's-Appellee's motion to dismiss on the basis of the running of the statute of limitations."
 {¶ 17} In his first, second, and fourth assignments of error, Weaver disputes the trial court's factual findings and its conclusion that Armando's did not violate the CSPA. He argues the trial court's conclusion that the parties agreed that Armando's would begin repairs only after Weaver paid in full is against the manifest weight of the evidence. He disputes the trial court's conclusion that he received a copy of the written estimate. Finally, he argues that the situation, when viewed as a whole, was unfair and deceptive because the repairs were not made in a timely manner.
 {¶ 18} In response, Armando's argues the trial court's findings are not against the manifest weight of the evidence since the record demonstrates there were many reasons for the trial court to question Weaver's credibility. Accordingly, it argues the trial court correctly found the parties agreed that Weaver would pay before Armando's began repairs. In addition, it argues the trial court correctly concluded Weaver received the written estimate.
 {¶ 19} In order to determine whether the trial court made the correct ruling, we must first examine exactly how Weaver claims Armando's violated the CSPA. R.C. 1345.02(A) provides that no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. R.C. 1345.02(B) then provides a non-exhaustive list of unfair or deceptive acts or practices. R.C. 1345.05(B)(2) then allows the Attorney General to adopt rules which further define or specify certain unfair or deceptive practices. OAC 109:4-3-13 was adopted pursuant to this statute and defines certain deceptive practices in regard to the performance of either repairs or service upon a motor vehicle. The parties do not dispute whether this transaction falls within the CSPA and OAC109:4-3-13. Instead, they dispute whether Armando's violated the statute and rules.
 {¶ 20} Weaver challenges the trial court's findings. This court may only reverse those findings if they are against the manifest weight of the evidence. Abney at 431. "When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Snaderv. Job Master Svcs. (2000), 136 Ohio App.3d 86, 89. Thus, this court must, when reviewing the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.) Id., quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 21} Weaver first argues Armando's violated OAC 109:4-3-13(C)(12) and (13). OAC 109:4-3-13(C)(12) states that Armando's must supply Weaver with an itemized list of repairs which includes certain information. OAC109:4-3-13(C)(13) states that Armando's must tender any replaced parts to Weaver. But Weaver's car was still at Armando's at the time of trial. Since Weaver had not asked for his car, Armando's could not have presented him with either the parts which were replaced or an itemized list of repairs. Accordingly, Weaver's argument that Armando's violated these provisions is meritless.
 {¶ 22} Weaver also argues Armando's violated Ohio Adm. Code109:4-3-13(C)(9). That provision states it is an unfair practice when a supplier represents that repairs have been made or services have been performed when such is not the fact. Weaver does not explain how he believes Armando's violated this provision of the Administrative Code. Furthermore, a review of the record does not demonstrate what alleged repairs or services Weaver is referring to. Accordingly, Weaver's argument that this provision was violated is also meritless.
 {¶ 23} The remainder of Weaver's arguments concern Armando's alleged failure to inform him he could receive a written estimate and Armando's material understatement of the estimated cost of the repairs. Ohio Adm. Code 109:4-3-13(A) provides it is an unfair practice if the supplier does the following:
 {¶ 24} "(1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date and, if requested by the consumer, the anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language:
 {¶ 25} "Estimate
 {¶ 26} "You have the right to an estimate if the expected cost of repairs or services will be more than twenty-five dollars. Initial your choice:
 {¶ 27} ___ written estimate
 {¶ 28} ___ oral estimate
 {¶ 29} ___ no estimate
 {¶ 30} "(2) Fail to post a sign in a conspicuous place within that area of the supplier's place of business to which consumers requesting any repair or service are directed by the supplier or to give the consumer a separate form at the time of the initial face to face contact and prior to the commencement of any repair or service which clearly and conspicuously contains the following language:
 {¶ 31} "Notice
 {¶ 32} "If the expected cost of a repair or service is more than twenty-five dollars, you have the right to receive a written estimate, oral estimate, or you can choose to receive no estimate before we begin work. Your bill will not be higher than the estimate by more than ten per cent unless you approve a larger amount before repairs are finished. Ohio law requires us to give you a form so that you can choose either a written, oral, or no estimate." OAC 109:4-3-13(A)(1), (2).
 {¶ 33} In a similar vein, Ohio Adm. Code 109:4-3-13(C)(11) states a supplier shall not "[m]aterially understate or misstate the estimated cost of the repair or service."
 {¶ 34} At trial, Weaver demonstrated he initially visited Armando's on August 6, 1997, and paid a $250 deposit. He testified that when he returned with his car a few days later, the service manager told him the repairs would be $600. He stated he never received a document from Armando's and did not see the required sign posted at Armando's. He was eventually charged $1009.17 for the repairs. In response, Armando's produces a document generated on August 11, 1997, which gives the notification required by Ohio Adm. Code 109:4-3-13(A)(1). That document contains a written estimate of $1,050. In addition, it argues that Weaver's testimony establishes that he did not see a sign, not that a sign was not there.
 {¶ 35} Weaver argues the trial court's conclusion that he and Armando's agreed that he would pay the total cost of the repairs before Armando's began work is against the manifest weight of the evidence. But this is not the case. Although Weaver testified that no one at Armando's ever told him this, his actions demonstrate otherwise. For instance, when he called and asked about his car, the service manager told him that the repairs would be more than he had already paid. He would then go to Armando's and pay more. This pattern of activity continued until he paid the last part of the $1,009.17 repair cost. Due to this pattern of activity, it is reasonable to conclude that Weaver understood that the repair work was not proceeding because he had not paid Armando's enough money.
 {¶ 36} Similarly, we find it reasonable for the trial court to discount Weaver's testimony that he did not receive the document which stated that he could receive a written estimate and which contained a written estimate. There are numerous places in the record which demonstrate that Weaver was confused at the time of the transaction between the parties and cast doubt upon his credibility. Because his case was dependent upon his credibility, it was not unreasonable to find against him based on these inconsistencies.
 {¶ 37} Furthermore, Armando's raised the statute of limitations as an affirmative defense and argues it in its conditional assignment of error. R.C. 1345.10(C) provides that a claim under the CSPA must be brought within "two years after the occurrence of the violation which is the subject of suit." This is an absolute time limit to which the discovery rule does not apply. Lloyd v. Buick Youngstown, GMC (1996),115 Ohio App.3d 803, 807. The events these claims arose out of all occurred on or shortly after August 6, 1997. Weaver did not file his complaint until September 16, 1999. Accordingly, these claims are time-barred by the statute of limitations. Accordingly, Weaver cannot recover based on an alleged violation of Ohio Adm. Code 109:4-3-13(A)(1) or (2). These assignments of error are meritless.
 {¶ 38} Because each of Weaver's assignments of error are meritless, the judgment of the trial court is affirmed.
Donofrio and Vukovich, JJ., concur.