[Cite as *Artisan & Truckers Cas. Co. v. JMK Transp., L.L.C.*, 2013-Ohio-3577.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| ARTISAN AND TRUCKERS CASUALTY COMPANY, | : | |
| | : | CASE NO. CA2013-01-004 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>8/19/2013 |
| - vs - | : | |
| | : | |
| JMK TRANSPORTATION, LLC, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |
| | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2011 CVH 1096

J. Timothy Riker, 115 West Ninth Street, Cincinnati, Ohio 45202, for plaintiff-appellee, Artisan and Truckers Casualty Company

JMK Transportation, 8070 Beechmont Avenue, Cincinnati, Ohio 45255, appellee, pro se

A&K Barkley Cab Co., 8070 Beechmont Avenue, Cincinnati, Ohio 45255, appellee, pro se

Adrienne Missy Barkley, 8070 Beechmont Avenue, Cincinnati, Ohio 45255, appellee, pro se

Marion Tidwell, 3923 Ebenezer Road, Cincinnati, Ohio 45248, appellee, pro se

Elizabeth Mason, 101 East Main Street, 2nd Floor, Batavia, Ohio 45103, for appellees, Michael McKibben, Brent Anstaett and Clermont County Commissioners

Kevin C. Connell, Fifth Third Centre, 1 South Main Street, Suite 1800, Dayton, Ohio 45402, for appellee, Erie Insurance Company

Howard D. Cade III, 526-A Wards Corner Road, Loveland, Ohio 45140, for defendant-appellant, Betty Barger

**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Betty Barger, appeals a decision of the Clermont County Court of Common Pleas granting declaratory judgment in favor of plaintiff-appellee, Artisan & Truckers Casualty Company (Artisan).  For the reasons stated below, we affirm the decision of the trial court.

{¶ 2}  On May 28, 2010, Barger was involved in an automobile accident that involved her car, another vehicle, and a 2001 Ford Crown Victoria, Vin # 151221 (Crown Victoria).  The Crown Victoria was operated by Marion Tidwell, who worked for JMK Transportation (JMK).  On the day of the accident, Tidwell was picking up the Crown Victoria from a garage where it was getting repaired so that the vehicle could be used in JMK's business.  Minutes after picking up the vehicle, a collision occurred where Barger suffered serious injuries.

{¶ 3}  At the time of the collision, JMK had an automobile insurance policy with Artisan.  The Crown Victoria was not listed in the declarations page of the policy.  Subsequently, Artisan filed a complaint for declaratory judgment to determine its obligations under the insurance policy.  On September 20, 2012, a trial was held which established the following facts.

{¶ 4}  JMK is a Medicaid transportation company owned by Adrienne Barkley.  In November 2008, Barkley incorporated JMK.  Prior to the establishment of JMK, Barkley was the sole shareholder of A&K Barkley Cab Co., Inc. (A&K).  A&K was a general purpose cab company which had operated for several years.  In 2007 and 2008, Barkley was looking to sell the assets of A&K and start a smaller transportation company.  During this time, A&K purchased the Crown Victoria.  The Crown Victoria's title and registration listed A&K as the owner.

{¶ 5}  A&K ceased operations and sold most of its assets to another party in July 2008.  The asset sale included A&K's goodwill and 30 of A&K's vehicles.  A 2001 Crown

Victoria was not included in the sale. After the asset sale, Barkley transferred A&K's leftover vehicles, including the Crown Victoria, from its lot in Queen City to a new lot located in Miamitown. Some of the transferred vehicles were driven for JMK's business while others were used for spare parts. Through most of the time JMK was operating its business, the Crown Victoria suffered from mechanical failure and was left at the Miamitown car lot. The titles of the leftover vehicles, including the Crown Victoria, remained in A&K's name even though many of the vehicles were being used in JMK's business.

{¶ 6} In 2008, JMK purchased automobile insurance through National Indemnity. The Crown Victoria was listed as a covered vehicle under this policy. However, in 2009 JMK bought insurance through Artisan and the Crown Victoria was not included under this new policy. Additionally in 2009, Barkley as proprietor of JMK, filed a tax return claiming several vehicles for tax deduction purposes. The vehicles were not listed by their VIN numbers but a "2001 Crown Vick (sic) Auto" was claimed as a tax deduction.

{¶ 7} Approximately five weeks before the collision, Barkley's brother towed the Crown Victoria to a garage to have its engine repaired and to be painted. The vehicle was to be in JMK's colors, a gray body with white JMK lettering on the side. On the day of the accident, Tidwell drove a JMK vehicle to the garage, with the intent of dropping it off for potential repair and picking up the Crown Victoria, which was to be placed in service. Barkley testified that on the day of the accident, the vehicle was just being converted to use by JMK and that it was basically a new vehicle to JMK that day. Fifteen minutes after Tidwell picked up the Crown Victoria, the collision occurred.

{¶ 8} On December 21, 2012, the trial court found the Crown Victoria was not an insured vehicle under the Artisan policy. The court reasoned that the Crown Victoria was excluded from the policy because it was not listed on the declarations page, JMK acquired the vehicle prior to policy period, and JMK was the owner of the vehicle for more than 30

days prior to the accident. In finding that JMK was the owner of the Crown Victoria, the court applied the Ohio Uniform Commercial Code (UCC) rather than the Ohio Certificate of Title Act. Consequently, Artisan owed no coverage under the policy. Barger appealed, raising a sole assignment of error:

{¶ 9} THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE'S COMPLAINT FOR DECLARATORY JUDGMENT.

{¶ 10} Barger argues the trial court erred in finding that the vehicle was not insured under the Artisan policy. Specifically, Barger argues the court erred in its application of law in determining that the Ohio UCC rather than the Ohio Certificate of Title Act identifies the owner of the vehicle for purposes of determining insurance coverage in the case of an accident. Barger also asserts that three of the court's factual decisions were not supported by the evidence. These decisions were that (1) JMK acquired the vehicle in 2008, (2) JMK had possession of the vehicle when it was towed to the garage, and (3) the vehicle was used for spare parts by JMK.

### Insurance Policy

{¶ 11} JMK's commercial automobile insurance policy with Artisan provides coverage for damages an insured becomes legally responsible for because of an accident arising out of the use of an "insured auto." The sole issue in this case is whether the Crown Victoria qualified as an "insured auto" under the policy.

{¶ 12} The Artisan policy provides several definitions for an "insured auto." One definition includes any auto that is specifically described on the Declarations Page of the policy. In this case, it is undisputed that the Crown Victoria was not on the Declarations Page. Therefore, our inquiry turns to the other definitions of "insured auto."

{¶ 13} An "insured auto" also covers an "additional auto" on the date the insured becomes the owner. The policy specifies that coverage will extend to the "additional auto" if,

i. You acquire the auto during the policy period shown on the Declarations Page;
ii. We insure all autos owned by you that are used in your business; and
iii. No other insurance policy provides coverage for that auto.

The policy goes on to state that it will cover an "additional auto" for a period of 30 days after the insured becomes the owner of the auto. The coverage will not extend after the 30-day period unless the insured requests the "additional auto" to be included in the policy.

{¶ 14} Another type of "insured auto" under the policy is a "temporary substitute auto." A "temporary substitute auto" is defined as "any auto used, with the permission of its owner, as a substitute for an insured auto that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction." A "temporary substitute auto" also is "not owned by or registered to you* * *," not owned by your employee or leased for a period of six months or more by your employee, and "not borrowed from your employees or members of their households."[1]

### Legal Argument

{¶ 15} We begin with Barger's first argument, that the court used the incorrect law to determine whether JMK or A&K owned the vehicle. The issue of ownership is important because if JMK owned the Crown Victoria for less than 30 days, the "additional auto" provision that excludes coverage for vehicles owned longer than 30 days would not apply. Additionally, the determination of ownership is important for coverage under the "temporary substitute auto" provision because this coverage hinges on finding that JMK never owned the Crown Victoria.

{¶ 16} The Supreme Court recently clarified that once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are

---

1. The policy also provides coverage for a "replacement auto." However, both parties concede that the Crown Victoria did not qualify as a "replacement auto" and therefore we will not address this issue.

reviewed de novo. *South v. Browning*, 12th Dist. Warren No. CA2012-09-088, 2013-Ohio-1491, ¶ 10, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 13, 17. Accordingly, we review the trial court's decision de novo.

{¶ 17} The Ohio UCC Section 2-401, codified in R.C. 1302.42(B), provides,

Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *.

{¶ 18} On the other hand, the Ohio Certificate of Motor Vehicle Title Act provides "no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered" unless evidenced by a certificate of title, by admission in the pleadings, by stipulation of the parties, or by an instrument showing a valid security interest. R.C. 4505.04(B).

{¶ 19} The Supreme Court has held that "[t]he criteria found in R.C. 1302.42(B), and not the Certificate of Title Act, identify the owner of a motor vehicle for purposes of determining insurance coverage in an accident." *Smith v. Nationwide Mut. Ins. Co.*, 37 Ohio St.3d 150 (1988), syllabus. In *Smith*, the Court was determining the owner of an automobile when the purchaser of the vehicle received imperfect title from the vehicle's previous owner and was involved in an accident. *Id.* at 152. The purchaser had not insured the vehicle while the previous owner retained coverage on the automobile. *Id.*

{¶ 20} In finding that the Ohio UCC should apply to identify the owner for purposes of determining insurance coverage in an accident, the Court reasoned that "[t]he purpose of the Certificate of Title Act is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles." *Id.*, citing *Hughes v. Al Green, Inc.*, 65 Ohio St.2d 110 (1981). Thus, the Certificate of Title Act "is irrelevant to all issues of

ownership except those regarding the importation of vehicles, rights as between lienholders, rights of bona-fide purchasers, and instruments evidencing title and ownership." *Smith* at 153.

{¶ 21} We find that the trial court did not err in looking to R.C. 1302.42(B) to determine the owner of the Crown Victoria. The issue in this case was whether JMK or A&K was the owner of the Crown Victoria for purposes of determining insurance coverage in an automobile accident. The Supreme Court has stated that in this circumstance, courts must look to the Ohio UCC to determine the ownership of the automobile. As noted in *Smith*, application of the Ohio Certificate of Title Act is proper in cases in which there is an issue as to the rights between lienholders, the rights of bona-fide purchasers, and the instruments evidencing title and ownership. Further, the court did not err in applying subsection (B) in determining the ownership of the Crown Victoria because the evidence demonstrated that the ownership of the Crown Victoria was transferred when it was delivered to the Miamitown lot.

{¶ 22} Additionally, we disagree with Barger that *Smith* is limited to cases where there has been a sale of the vehicle. As this court has previously noted, the distinction between gifts and sales is an "illusory distinction when the reasoning behind *Smith* is considered." *Abney v. Western Res. Mut. Cas. Co.*, 76 Ohio App. 3d 424, 428 (12th Dist.1991). Instead, "the Supreme Court has made it clear that, given the purpose of the Certificate of Title Act, unless an action involves issues of ownership relating to importation of vehicles, rights between lienholders, rights of bona-fide purchaser, or instruments evidencing title and ownership, the Certificate of Title Act is not the exclusive method to prove ownership of a vehicle." *Id. See Howard v. Himmelrick*, 10th Dist. Franklin No. 03AP-1034, 2004-Ohio-3309, ¶ 8 (noting that *Smith* has been applied in non-sale situations.)

{¶ 23} Consequently, the trial court correctly applied R.C. 1302.42(B) to determine the

ownership of the Crown Victoria.

**Factual Arguments**

{¶ 24} Barger also challenges the trial court's factual determinations in finding that the Crown Victoria was not an "additional auto" or a "temporary substitute auto" under the policy. Specifically, Barger argues the court's finding that JMK "acquired" the Crown Victoria no later than October 2008 was against the manifest weight of the evidence. Barger also contends the court erred in finding that (1) the Crown Victoria was in JMK's possession and control the day it was towed to the garage, and (2) the Crown Victoria was used for spare parts by JMK and thus was in JMK's possession.

{¶ 25} When evaluating whether a judgment is against the manifest weight of the evidence in a civil case, the standard of review is the same as in the criminal context. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. We weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Marinich v. Lumpkin*, 12th Dist. Warren No. CA2011-11-124, 2012-Ohio-4526, ¶ 20, quoting *Eastley* at ¶ 20. In weighing the evidence, we are mindful of the presumption in favor of the finder of fact. *Eastley* at ¶ 21. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984).

{¶ 26} We begin by discussing the trial court's determination that JMK "acquired" the Crown Victoria no later than October 2008. On appeal and during the trial, the court and the parties use "acquire" and "own" interchangeably in determining whether insurance coverage exists. For coverage under the "additional auto" provision in the policy, the Crown Victoria

- 8 -

must have been "acquired" during the policy period, which was from January 30, 2010 through January 30, 2011. Additionally, for coverage under the "additional auto" and "temporary substitute auto" provisions, JMK must not have owned the Crown Victoria for more than 30 days prior to the accident.

{¶ 27} While "acquire" is not defined in the policy, the ordinary meaning of "acquire" is "to gain possession or control of; to get or obtain." *Black's Law Dictionary*, (9th ed.2009). *See Morner v. Giuliano*, 167 Ohio App.3d 785, 2006-Ohio-2943 (12th Dist.). As described above, ownership for insurance purposes in an automobile accident hinges on physical possession of the automobile. Therefore, as these terms both focus on the possession of the vehicle, they have substantially the same meaning.

{¶ 28} The trial court's finding that JMK acquired or owned the Crown Victoria no later than October 2008 is not against the manifest weight of the evidence as the evidence shows the Crown Victoria was transferred from A&K to JMK after the asset sale. In July 2008, A&K sold most of its assets and ceased doing business. For a number of years Barkley had been looking to sell A&K and start a smaller transportation company. The vehicles that were not sold in the A&K asset sale were moved from A&K's car lot to a Miamitown car lot and were to be used in the JMK business. The Crown Victoria was not included in the asset sale. A few months after the asset sale, in October 2008, JMK officially began business operations.

{¶ 29} After the asset sale, JMK took several actions that evidenced its ownership and control of the Crown Victoria. JMK's 2008 automobile insurance policy with National Indemnity listed the Crown Victoria as a covered automobile. Additionally, a 2009 tax return shows that JMK took deductions for the vehicles not sold in the asset sale. The return lists a "2001 Crown Vick (sic) Auto." The individual who prepared JMK's taxes testified that a business cannot take a deduction for a vehicle unless the business owns the vehicle. While this return did not list the VIN numbers of t2he automobile and therefore is not definitive

evidence of JMK's ownership of the Crown Victoria, it is of some evidentiary value to our determination.

{¶ 30} Barger contends that Barkley's testimony that the Crown Victoria was being converted to use by JMK the day of the accident and the Crown Victoria's title and registration show that JMK did not acquire the vehicle in 2008. We disagree. While the title and registration of the Crown Victoria lists A&K as the owner of the vehicle, three of the four vehicles operated by JMK were still titled and registered to A&K. Barkley explained that she did not transfer the title of these vehicles to JMK because she did not think it was necessary. A&K was no longer operating as it had reported zero income since 2009. Therefore, A&K's name on the title and registration is not definitive evidence of possession in this case. Additionally, we note that for purposes of determining ownership, this court looks to physical possession in cases of insurance coverage in an automobile accident and in this case, JMK had physical possession of the vehicle. Lastly, Barkley's testimony about JMK's ownership of the Crown Victoria is outweighed by other evidence which shows that JMK owned the Crown Victoria since 2008.

{¶ 31} Therefore, the trial court's finding that JMK acquired and owned the Crown Victoria no later than October 2008 is not against the manifest of the evidence. Consequently, because we find that JMK owned the Crown Victoria by October 2008, we necessarily find that the JMK had possession of the Crown Victoria when it was towed to the garage and that JMK had possession of the Crown Victoria while it was in the car lot, possibly being used for spare parts. Thus, the Crown Victoria is excluded from coverage under the "additional auto" and "temporary substitute auto" provisions.

## Conclusion

{¶ 32} The trial court did not err in granting declaratory judgment in favor of Artisan. The court correctly applied the Ohio UCC provision codified in R.C. 1302.42(B) to determine

the ownership of the Crown Victoria and the court's determination that JMK acquired and owned the Crown Victoria no later than October 2008 is not against the manifest weight of the evidence. Therefore, the Crown Victoria is not a covered automobile under the "additional auto" or "temporary substitute auto" provision in the policy.

{¶ 33} Barger's sole assignment of error is overruled.

{¶ 34} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.